David P. Myers, SBN 206137
dmyers@myerslawgroup.com
Rudy Balderamma, SBN 234602
rbalderamma@myerslawgroup.com
Ann Hendrix, SBN 258285
ahendrix@myerslawgroup.com
THE MYERS LAW GROUP, A.P.C.
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Phone (909) 919-2027
Fax (888) 375-2102
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCAL 50, an unincorporated organization and SAUNDRA ECKLUND, an individual, | **Case No.** SACV13-00349-JVS (JPRx)<br> Hon. Beverly Reid O'Connell |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, CTW/CTU, and WORKERS UNITED CONFERENCE | |
| Defendants. | **DATE:** August 19, 2013<br>**TIME:** 1:30 P.M. |
| | Case filed: February 28, 2013 |
| _____ | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, CTW/CTU, and WORKERS UNITED CONFERENCE; EDGAR ROMNEY, as Trustee of Workers United Local 50, | |
| Counterclaimants, | |
| v. | |
| LOCAL 50, an unincorporated association, and SAUNDRA ECKLUND, an individual, Counterclaim Defendants; and DOES 1-10 inclusive, | |
| Counterclaimant | |

i

1

# TABLE OF CONTENTS

I.   FACTS ........................................................................................................... 1

II.   ARGUMENT ................................................................................................. 1

A.  The Court's Preliminary Injunction Order Has Not Undermined Local 50's Independent Standing to Pursue Its Claims for Relief ............................................................... 1

1.   Factual Background Regarding the Court's Preliminary Injunction Order ...................... 1

2.   Implications of the Court's Ruling on the Use of Trusteeships to Subvert Union Democracy ........................................................................................................ 2

3.   Implications of the Court's Ruling on Local 50's Standing as a Litigant in this Case ..... 3

B. The WU Constitution Does Not Authorize the Trustee to Initiate or Prosecute Litigation in an "Affiliate's Name" ........................................................................................ 5

C. The Defendants' Exhaustion of Remedies Defense Cannot Adjudicated Until The Court Clarifies the Scope of Her Ruling on the Right of Local 50 to Pursue Its Claims .................. 6

1.   Local 50's Claims Will Be Deemed Non-Justiciable If Control of Local 50's Lawsuit is Given to Trustee Edgar Romney or Any Other Representative of the Defendants ................ 6

2.   A Conflict of Interest Precludes Trustee Romney Over Local 50 In Connection With the Litigation ............................................................................................................ 7

3.   Transferring Control Over Local 50's Claims to Trustee Romney Will Materially Prejudice the Rights of Local 50's Former Leadership ...................................................... 7

D.  The Defendants' Exhaustion of Remedies Defense Lacks Merit ..................................... 8

1. The Defendants' Exhaustion Defense Fails Because Workers United's Internal Union Appeals Process Is Inapplicable to the Plaintiffs' Claims .............................................. 8

2. The Defendants' Exhaustion Defense Lacks Merit Under the Clayton Doctrine ............. 11

3. The Exhaustion Defense Requires a Showing that Plaintiffs Could Not Plead or Prove Any Set of Facts Excusing Compliance ...................................................................... 12

4.   The Trusteeship Imposed by The Defendants Supports Plaintiffs' Contention that Any Internal Appeal Would Have Been Futile ................................................................... 13

5.   The Exhaustion Defense Fails Because There Were No Adequate Remedies ................ 14

6.   The Plaintiffs Did Not Unreasonably Circumvent the Internal Appeals Procedure As a Matter of Expediency ........................................................................................... 16

7.   The Court Cannot Resolve the Exhaustion of Remedies Defense Without Conclusively Resolving the Question as to Whether Local 50 Had Disaffiliated By Operation of Law .... 18

8.   No Defense is Raised as to the Ninth Claim For Relief under Title III of the LMRDA. 19

E.  Assuming *Arguendo* that the Court Finds that Plaintiffs Failed to Exhaust Administrative Remedies, the Dismissal Must be Without Prejudice ................................................... 19

F.   Plaintiff Ecklund's Tenth Claim for Relief Under Title I of the LMRDA Is a Viable Independent Cause of Action ................................................................................. 20

III.  CONCLUSION ............................................................................................. 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*Angulo v. The Levy Co.*, 568 F. Supp. 1209 ...................................................................16

*Benda v. Grand Lodge of the Int'l Ass'n of Machinists*, 584 F.2d 308 .........................7

*Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179 ....................................................17

*Clayton v. Int'l Union*, 451 U.S. 679 ............................................................................15

*Doty v. Sewall*, 908 F.2d 1053 ......................................................................................17

*Dow Chemical Co. v. EPA*, (3d Cir. 1979) 605 F.2d 673 .............................................10

*Farrell v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 888
    F.2d 459 .....................................................................................................................25

*Fulk v. United Transportation Union*, 108 F.3d 113 .....................................................15

*Ghebreselassie v. Coleman Sec. Service*, 829 F.2d 892 ..........................................15, 17

*Higgins v. Modern Laundry and Dry Cleaning Co.*, 486 F. Supp. 239 ........................12

*International Brotherhood of Boilermakers, etc. v. Kelly*, 815 F.2d 912 (3d Cir. Pa.
    1987) ..........................................................................................................................10

*Jones v. Bock* 549 US 199 .............................................................................................15

*Kaczynski v. Draper Printing*, 848 F. Supp. 1060 .......................................................18

*Local 1199, Drug, Hospital & Health Care Employees Union, etc. v. Retail,*
    *Wholesale & Dep't Store Union*, (SDNY 1987) 671 F. Supp. 279 ........................21

*Local 323 v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers*, 160
    F. Supp. 2d 500 ..................................................................................................19, 22

*McDonald v. Oliver*, 525 F.2d 1217 ........................................................................14, 17

*San Filippo v. United Brotherhood of Carpenters & Joiners*, 525 F.2d 512 ..............5, 9

*Schonfeld v. Penza*, 477 F. 2d 899 ...............................................................................23

*Serv. Employees Int'l Union Local 87 v. Serv. Employees Int'l Union Local No.*
    *1877*, 230 F. Supp. 2d 1099 ..................................................................................7

*Sheet Metal Workers International Ass'n., et al. v. Lynn*, 488 U.S. 347 ...................22, 23

*Stevens v. Northwest Indiana Dist. Council, United Broth. of Carpenters*, 20 F.3d
    720 ..............................................................................................................................15

*Thompson v. Office and Professional Employees Intern. Union, AFL-CIO*, 74 F.3d
    1492 ............................................................................................................................25

*Wyatt v. Terhune* 315 F3d 1108 ....................................................................................21

iii

## I.    FACTS

Since the time the instant Amended Complaint ("FAC") was filed, the Court has issued a preliminary injunction, ordering that Plaintiffs not interfere with the Defendant Workers United's administration of its trusteeship.  Even though Local 50 has been temporarily trusteed, this order for temporary injunctive relief does not end the litigation with respect to either party.  While Plaintiffs anticipate that Defendants will assert control over control over Local 50 in the litigation, permitting such action will give rise to a serious conflict of interest and, moreover, will materially prejudice the rights of Local 50.

While the trusteeship order has changed the legal landscape of this case, Plaintiff Ecklund, in her individual capacity, and Local 50 both retain the right to sue. See *San Filippo v. United Brotherhood of Carpenters & Joiners*, 525 F.2d at 512 ("Furthermore, since Local 72 commenced its suit before the United Brotherhood's action became effective,  no court would accept the argument that Local 72's cause should be dismissed because the United Brotherhood has succeeded in destroying the Local).  Accordingly, for the reasons set forth *infra*, Plaintiffs oppose the Defendants' Motion to Dismiss the FAC.

## II.    ARGUMENT[1]

A.    THE COURT'S PRELIMINARY INJUNCTION ORDER HAS NOT UNDERMINED LOCAL 50'S INDEPENDENT STANDING TO PURSUE ITS CLAIMS FOR RELIEF

1.    *Factual Background Regarding the Court's Preliminary Injunction Order*

The Plaintiffs initiated this lawsuit with the understanding that it would be in the interests of union stability for the Court to issue a declaratory relief as to the validity of its disaffiliation and the disposition of its assets in the event of a disaffiliation.  At the time, Local 50 and Ecklund stood together as a single unified

---

[1] The Plaintiffs feel compelled to address the recent decision by the Court as it relates to their ability to represent Local 50 in this matter.  While this issue was not raised by the Defendants, as the Court had not issued its decision regarding the preliminary injunction, the plaintiffs did not the issue to be raised for the first time in the Defendant's reply papers.

voice of dissent against the combined power of the Workers United and SEIU. At no time, did the Plaintiffs anticipate that the Defendants would endeavor to trustee Local 50 on the basis of blatantly pretextual and frivolous charges of alleged misconduct.  (FAC, Ex. I)

The lawsuit remains essential because it will preserve the Plaintiffs' right to contest the validity of the Defendants' unprecedented trusteeship action against Local 50.  Once discovery commences, the Defendants will be hard-pressed to deny that the dominant motive behind the trusteeship was to effectively suppress Plaintiffs efforts to disaffiliate by wiping out its leadership by root and stem.   It is not sheer coincidence that, throughout the long course of its relationship with Local 50, the Defendants Workers United has never scrutinized Local 50's LM-2 filings in order to see that Local 50 was properly classifying its "casual employees" as voting members.  Nor is it coincidence that Plaintiffs had been charged with financial malpractice in the first time in their history.   Indeed, everything changed once the Plaintiffs indicated their desire to disaffiliate.  By this point, Defendants had informed the Plaintiffs that they going to take control of Local 50 by any means necessary.  At the present, the parties have recently received notice of the preliminary injunction decision, wherein the Defendants prevailed by persuading the Court that "casual employees" were being denied the right to vote since their non-voting status was reflected in LM-2 filings. (Dkt# 23)

2.    *Implications of the Court's Ruling on the Use of Trusteeships to Subvert Union Democracy*

In the bigger picture, the Court's ruling possibly subverts union democracy by creating a strong incentive on the part of international unions to gamble on trusteeships as a way of undermining dissent.   While it is certainly possible to imagine a situation where an international union may legitimately trustee a local union where some of the reasons offered are factually rebutted or insufficient for

some reason or another, it is a wholly different situation where, as here, an international union starts digging around for any conceivable justification to prevent a disaffiliation.  The reasoning adopted by the Court would open the door to more cases in which an international union can decide to "clean house" in every dissenting executive board.  If Local 50's trusteeship experience demonstrates anything, it is that Defendants are prepared to expend immeasurable amounts of financial dues money to wage a protracted war of attrition.  The parties in this matter are on an incredibly uneven playing field, and Defendants are able to pool their vast financial and personnel resources to crush dissenting local unions.  While Local 50 and Ms. Ecklund respects the Court's findings, thou they disagree with them, it is clear the Court's findings do not prevent them from proceeding.

        3.     *Implications of the Court's Ruling on Local 50's Standing as a Litigant in this Case*

The Court has decreed in its ruling that Local 50 is presently under the control of the Defendants to correct the deficiencies listed in the Trusteeship Notice.  The unfortunate consequence of the Court's ruling is that it is totally unclear whether the scope of the Defendants' control over Local 50 will extend to limiting its right to pursue the present lawsuit.

First, the conflict of interest that exists between Local 50 and the Defendants concerning the issues presented in the lawsuit should alone bar Defendants from assuming representation of Local 50.  If Defendants have been given *carte blanche* to control Local 50's right to continue to pursue this lawsuit, Defendants will have obtained a victory that goes far beyond the purposes of the trusteeship in correcting internal problems.  Allowing Defendants to assume control over both sides of this litigation of the case will give rise to a conflict of interest that will necessarily work to the detriment of Local 50's best interests.  From day one, Local 50 sought to obtain a peaceable declaration of rights vis-à-vis the countervailing interests of the Defendants.  If the Defendants, are permitted to assume control over Local 50 in

this lawsuit, it is likely that they Defendants will take all steps to prevent Local 50 from vindicating its legal rights.

Second, allowing Defendants to negate Local 50's participation in the litigation will undermine the purposes behind the LMRDA.  The purpose of a trusteeship is to correct matters that are internal to the local union.  It is not a lawful purpose for a trustee to take control of a local union for the sole purpose of advancing the interests of the international union — particularly where there is a conflict between the international union instituting the trusteeship and the local union being trusteed.  In light of the limitations imposed on the scope and power of trustees, the Court should limit the Defendants' authority solely to addressing and correcting matters pertaining to the internal affairs of Local 50.

Third, if the Court conditions Local 50's right to pursue the instant lawsuit until the trusteeship is terminated, Local 50's rights and remedies will be significantly prejudiced.  Rather than permitting Local 50 to obtain a peaceable determination of its respective rights to disaffiliate and retain its assets, Defendants will undoubtedly dismiss Local 50's lawsuit with prejudice.  Meanwhile, for the foreseeable future, the Defendants will benefit from the presumption the 18-month validity as to the trusteeship, manifested by the clear and convincing standard of proof needed to challenge the continuation of the trusteeship.  It will subvert the delicate balance of power between local unions and their parent organizations to allow international unions to use trusteeships to undermine the interests of local unions by suppressing lawsuits brought by local unions against international unions.

At minimum, the Court should stay the current proceedings to allow for the resolution of this issue by supplemental briefing and a hearing.  Absent an order definitively clarifying the scope of trustee Edgar Romney's authority over Local 50's participation in the litigation, the Plaintiffs will be materially prejudiced in regard to the continuation of this lawsuit.  Plaintiffs submit that Defendants' counsel and representatives — including trustee Edgar Romney — should be

disqualified from assuming control over Local 50's prosecution of this lawsuit. Nor should the case be dismissed outright. See *San Filippo v. United Brotherhood of Carpenters & Joiners*, 525 F.2d at 512 ("Furthermore, since Local 72 commenced its suit before the United Brotherhood's action became effective, no court would accept the argument that Local 72's cause should be dismissed because the United Brotherhood has succeeded in destroying the Local).

    B.    THE WU CONSTITUTION DOES NOT AUTHORIZE THE TRUSTEE TO INITIATE OR PROSECUTE LITIGATION IN AN "AFFILIATE'S NAME"

Any effort by trustee Romney to assume control over Local 50's litigation will be ultra vires to the extent that Article 5, Section 4, of the WU Constitution articulates and delineates the powers of the trustee. In pertinent part, Section 4 states:

> The GEB shall appoint the Trustee. All affected officers and members shall honor and comply with the Trustee's letters of appointment. The Trustee shall have full authority to conduct all of the affiliate's affairs, to suspend all officers, to suspend bylaws, to appoint temporary officers and employees, and conduct all of the affiliate's financial matters. The Trustee may suspend or convene meetings, whose purposes shall be limited to those set forth by the Trustee, and may enter into agreements in the affiliate's name…. (FAC Ex. A)

While Article 5, Section 4, of the WU Constitution contemplates that the Trustee may conduct the "internal affairs" of Local 50 and even go so far as to "enter agreements in the affiliate's name," there is no grant of authority allowing the Trustee to initiate or prosecute lawsuits in the "affiliate's name." To the extent that there is an ambiguity in this language, such ambiguity must be construed against the drafter.

C.   THE DEFENDANTS' EXHAUSTION OF REMEDIES DEFENSE CANNOT ADJUDICATED UNTIL THE COURT CLARIFIES THE SCOPE OF HER RULING ON THE RIGHT OF LOCAL 50 TO PURSUE ITS CLAIMS

1.   *Local 50's Claims Will Be Deemed Non-Justiciable If Control of Local 50's Lawsuit is Given to Trustee Edgar Romney or Any Other Representative of the Defendants*

The constitutional requirement of justiciability has three distinct elements: "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution" *International Brotherhood of Boilermakers, etc. v. Kelly*, 815 F.2d 912 (3d Cir. Pa. 1987) (quoting *Dow Chemical Co. v. EPA*, (3d Cir. 1979) 605 F.2d 673, 678).

By and through this lawsuit, Plaintiffs seek an adjudication of justiciable disputes regarding unresolved questions as to the disposition of Local 50's assets, and questions regarding the extent to which Local 50's members can exercise their right to non-association without fear of reprisal by the trustee.  A favorable vindication of these rights and remedies sought by Local 50 will necessarily be adverse to the interests of the Defendants.

Assuming *arguendo* that the Court finds that Local 50 is no longer an active participant in the litigation on account of the trusteeship, the Court must issue a decision denying the Motion to Dismiss on the grounds that there exists no "live controversy" between the parties.  Put another way, Local 50 will lack a "sufficiently adverse" relationship to Defendants if trustee Edgar Romney is allowed to assume control over the litigation.  Thus, until and unless there is a resolution as to who controls the right to direct Local 50's involvement in the litigation, the Court lacks the jurisdiction to adjudicate the merits of the Motion to Dismiss the FAC.

### 2.   *A Conflict of Interest Precludes Trustee Romney Over Local 50 In Connection With the Litigation*

Because the constituent leadership of Local 50 has been replaced by trustee Edgar Romney, it is beyond peradventure that no action will be taken to prosecute the rights and remedies originally sought by Local 50.  However, given this manifest conflict of interest between Local 50 and the Defendants, Mr. Romney is in no position to vindicate the rights of Local 50 and its membership at the expense of his superiors.  If the Court finds that the Defendants have assumed control over all aspects of Local 50's internal affairs, the present lawsuit must be, as a matter of equity and fairness, stayed and tolled pending a successful challenge to the continuation of the trusteeship.

### 3.   *Transferring Control Over Local 50's Claims to Trustee Romney Will Materially Prejudice the Rights of Local 50's Former Leadership*

If the Court denies Local 50 the right to pursue an independent legal action against the Defendants Workers United and SEIU — particularly in regard to challenging their status as the supreme, superordinate labor organization having control over Local 50 — the Defendants will be able to materially prejudice the rights of Plaintiff Ecklund and Local 50's former leaders to seek legal relief. Whereas Plaintiff Ecklund, in her individual capacity as a member of Local 50, has standing to bring the claims on behalf of Local 50, she anticipates that the Defendants will adamantly refuse to authorize the prosecution of any claims for relief brought solely on behalf of Local 50.  Unless Plaintiff Ecklund is provided an opportunity to seek injunctive relief, Defendants will unfairly reap the benefit of concomitantly suppressing dissent within Local 50, while also benefiting from the foreseeable delay that will be caused by Plaintiff Ecklund's inability to vigorously prosecute her claims for injunctive and declaratory relief in connection with a full, fair and final disposition of her contention that Local 50 disaffiliated from Defendants with the majority democratic support of the membership, well before

1    the implementation of the trusteeship.

2        D.    THE DEFENDANTS' EXHAUSTION OF REMEDIES DEFENSE LACKS MERIT

3            Rather than confront the merits of the Plaintiffs' claims, the Defendants have

4    been content to rely almost entirely on  single affirmative defense for exhaustion of

5    remedies.  In the Motion to Dismiss, Defendants contend "that Local 50 has made

6    no attempt to exhaust the internal union remedies available to it, nor has alleged

7    any reasons that would excuse it from doing so." (Mtn. 1:15-18).  The Court should

8    reject this boilerplate defense on the grounds that (1) the WU Constitution contains

9    a vague and ambiguous internal appeals process that is inapplicable to the unique

10   claims brought by the Plaintiffs; (2) no adequate remedies could have been

11   obtained through the internal grievance process; and (3) the imposition of a

12   trusteeship demonstrated that internal review, in retrospect, would have been futile.

13

14        1.    *The Defendants' Exhaustion Defense Fails Because Workers
             United's Internal Union Appeals Process Is Inapplicable to the
15           Plaintiffs' Claims*

16       The fatal defect with this this "one size fits all" exhaustion defense is the fact

17   that the WU Constitution is inapplicable to the internal grievance of Plaintiffs'

18   claims.  It axiomatic that an internal appeals procedure must be clearly applicable

19   and unambiguous — particularly if it is relied upon to deprive a party of any

20   substantial legal rights.  No exhaustion is required where, as here, the internal

21   appeals procedure is, at best, ambiguous and, more significantly, did not contain

22   specific grievance procedures for the types of complaints asserted.  See e.g.,

23   *Higgins v. Modern Laundry and Dry Cleaning Co*., 486 F. Supp. 239, 240-41 (E.D.

24   Pa. 1980) (No exhaustion required where the union charter was ambiguous on its

25   face).

26       A careful reading of the WU Constitution demonstrates that the types of legal

27   claims that Plaintiffs have pending before this Court would not have been covered

28   by the internal grievance procedure.  To begin, Article 17, entitled "CHARGES,

     HEARINGS AND APPEALS," contemplates the filing of charges and appeals by

individual members and officers over violations of WU Constitution, affiliate by laws, and disciplinary infractions.  (FAC, Ex. A)

Article 1, Section 1, entitled "Grounds for Charges," provides that "[a] member or a person holding an elected or appointed office or position in Workers United or an affiliate may be required to appear at a disciplinary hearing when charged with any of the following [listed] offenses…."  By specifically enumerating the charges that are subject to an internal appeal, the Workers United has itemized, by implication, what is not subject to appeal.  Obviously, no charges listed in Article 1, Section 1, even remotely relate to the claims in the FAC. (FAC, Ex. A)

Article 1, Section 2, is relevant in identifying the type of affirmative claims that are subject to appeal.  In pertinent part, Article 1, Section 2, provides that "All charges shall state: the name and address of the person being charged; ***the sections of the Constitution or bylaws which are alleged to have been violated***; a brief statement of the facts indicating such alleged violation; and the name of the person and organization with whom the charges are being filed.  They shall be signed by the person making the charges."  (Emphasis added.)  The highlighted provision makes clear that charges may only be brought in regard to the violation of "Constitution or bylaws…".  Plainly, a claim that does not involve a direct violation of a specific "Constitution or bylaw" is not a type of claim which is susceptible to internal appeal.

Article 1, Section 8, entitled "Summary Disposition," is substantively relevant because it reiterates the fact that charges subject to the internal appeals process must involve a breach of a constitution or bylaws.  In whole,  Article 1, Section 8, provides: "[a] charge may be dismissed without hearing if, after assuming the charging party's allegations to be true, the charges fail to describe actions ***which would constitute violations of Workers United's Constitution or an affiliate's governing documents***, or if the charges are of such a nature that the interest of the Union does not justify the expenditure of time, money, and other

resources necessary for the conduct of a disciplinary proceeding.  The decision whether to dismiss shall be made by the GEB with respect to charges considered by them or by the governing body of an affiliate with which charges have been filed or which has properly assumed jurisdiction." (Emphasis added.)  Again, the WU Constitution specifically identifies viable appeals as those solely relating to claims which "would constitute violations of Workers United's Constitution or an affiliate's governing documents."  Article 1, Section 8, emphasizes the fact that claims that do not state an actionable claim for relief may be rejected.  Section 8 further adds that charges may be summarily rejected if they do not warrant the cost for conducting "a disciplinary proceeding."  It goes without saying that non-constitutional claims such as rescission, fraud or the post-disaffiliation disposition of assets do not even arguably fit within the scope of these appeals provisions.

Various other sections of Article I relate to procedural details about how appeals are processed and, thus, are substantively irrelevant.

Article 1, Section 19, entitled Obligation to Exhaust Remedies, and Article 1, Section 20, entitled Failure to Exhaust Remedies, both specify the consequences of failing to appeal.  While these provisions bar a party from suing after failing to exhaust remedies, the provisions are limited in that they apply only to the exhaustion of grievances and remedies that are subject to the constitution.  Thus, Article 1, Section 18 provides that a party has a duty to exhaust remedies that are "permitted such member or affiliate under the terms of this Constitution, the affiliate's governing documents or contract […]".  Similarly, Article 1, Section 19, specifically requires the exhaustion solely of "remedies provided by this Constitution […]".  Thus, these catch-all exhaustion provisions are premised on the exhaustion remedies where are specifically available under the existing internal appeals procedures in the WU Constitution.  Referring back to these internal appeals procedures, we find that they do not even remotely cover disputes that do not specifically arise out of constitutional or bylaw disputes.

Among the eleven claims for relief in the FAC, the only claim in the FAC

that is based on a specific "constitution" provision being violated is the Second Claim for Relief, which provides that Defendants have violated the Workers United Constitution Article 5, Section 1(a), by implementing the trusteeship for an improper purpose.   As Defendants concede in their brief, no other Claim for Relief is based on a breach of any specific constitutional provision and, as such, no appeal would have been applicable.   To the extent that the Second Relief would ostensibly be subject to internal appeal, case law supports that claims for unlawful trusteeship are not susceptible to internal appeal.  See *McDonald v. Oliver*, 525 F.2d 1217, 1229 (5th Cir. 1976) (Holding that intra-union appeals would be unlikely to provide much relief since the protests would be to the very International which invoked the trusteeship.")

> 2.    *The Defendants' Exhaustion Defense Lacks Merit Under the* Clayton *Doctrine*

The factors a court should consider in exercising its discretion whether to require  exhaustion of internal union remedies include: (1) Whether union officials are so hostile to the plaintiff that it could not receive a fair hearing on the claim; (2) Whether the internal union procedures are inadequate to award the full relief to which the plaintiff would be entitled under Section 301; and (3) Whether exhaustion of remedies would unreasonably delay plaintiff's opportunity to have a judicial determination of the merits of the claim.  See *Clayton v. Int'l Union,* 451 U.S. 679, 689 (1981)

Importantly, the trial court is not required, moreover, to dismiss a plaintiff's case for failure to exhaust internal union appeals, even if all of the requirements for exhaustion are met. The court not only has discretion, but may even be required, to consider "any and all relevant circumstances" and to deny the union's request if it believes that exhaustion would be unfair or inappropriate. *Stevens v. Northwest Indiana Dist. Council, United Broth. of Carpenters*, 20 F.3d 720, 732 n.29, (7th Cir. 1994) ("The factors enumerated in *Clayton* are not limitations on a court's

discretion to excuse exhaustion. […] Rather, they represent what are perhaps the most common bases for forgiving a failure to pursue union remedies.") See also, *Fulk v. United Transportation Union*, 108 F.3d 113, 116 (7th Cir. 1997) ("In fact, in considering whether exhaustion [is] required, a court must look to the reasonableness of imposing it under the circumstances of the situation."); *Ghebreselassie v. Coleman Sec. Service*, 829 F.2d 892, 896 (9th Cir. 1987).

### 3. *The Exhaustion Defense Requires a Showing that Plaintiffs Could Not Plead or Prove Any Set of Facts Excusing Compliance*

The burden of establishing entitlement to the exhaustion defense lies with the union. *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179 (9th Cir. Cal. 1988) "(T)he usual practice under the Federal Rules is to regard exhaustion as an affirmative defense." *Jones v. Bock* 549 US 199, 212 (2007).  The Ninth Circuit provides that, however, in deciding such a motion to dismiss brought for failure to exhaust, the district court is to resolve factual disputes, and its findings are then subject to review under the clearly erroneous standard. *Id.* at 369.  The failure to exhaust is a species of nonenumerated grounds for a motion to dismiss under Rule 12(b).  Where, as here, the Rule 12(b) motion is brought as a Rule 12(b)(6) motion, the court may not consider evidence outside the pleadings.

The burden of establishing the availability and adequacy of internal union remedies is always on the union raising the defense.  The importance of this burden was illustrated in *Beyene v. Coleman Sec. Services, Inc.,* supra, wherein the defendant teamsters union asserted the exhaustion defense at summary judgment on the grounds that the plaintiff failed to invoke her remedies under the Teamsters Constitution before suing for breach of the duty of fair representation.  The record was uncontroverted in that the defendant union refused to file a grievance on plaintiff's behalf to attempt to secure her reinstatement following her arrest for suspicion of fiscal improprieties.  It was also uncontroverted that the plaintiff did not file internal union charges against her union representative, nor request a

hearing before defendant's governing body.  The Ninth Circuit nonetheless ruled that summary judgment in favor of the union was not proper because the union presented no competent evidence sufficient to raise a triable issue of failure to exhaust.  Specifically, the defendant union failed to introduce competent and admissible evidence showing that the plaintiff would recover money damages — claimed by and through her prayer for relief — if she had followed the internal union procedures prior to filing suit.  In conclusion, the court observed that the union would have fared no better in a motion to dismiss, because it failed to put forth any competent evidence that could sustain a finding that an adequate union remedy existed.

Here, it is unlikely that the Defendants will be able to support their 12(b)(6) motion with competent and admissible evidence sufficient to satisfy its burden of establishing the adequacy and availability to plaintiff of adequate internal union remedies. Even assuming arguendo that the Defendants make such a showing, the proper disposition is dismissal without prejudice. *Id.* at 368 n. 3.

Furthermore, various courts have taken the position that, as was stated *in Angulo v. The Levy Co.*, 568 F. Supp. 1209  (N.D. Ill. 1983), that the question of whether the pursuit of internal remedies should be excused often involves factual determinations which cannot be made on a motion to dismiss, unless it is clearly impossible for a union member to prove any set of facts that would excuse exhaustion.  The case herein plainly presents no such clear evidence that exhaustion could not have been proven by any set of facts alleged.

      4.    *The Trusteeship Imposed by The Defendants Supports Plaintiffs' Contention that Any Internal Appeal Would Have Been Futile*

While it is normally impossible to find "smoking gun" evidence of hostility, particularly in circumstances where the institutional parties are represented by counsel, the circumstances surrounding this dispute are sufficient to give rise to an inference that Plaintiffs would have been unlikely to obtain any fair result through

an internal grievance process.  Accepting all factual allegations in the complaint as true, dismissal under Federal Rule 12(b)(6) is improper because Plaintiffs have pleaded adequate facts that would excuse any purported failure to exhaust its internal union remedies.   In retrospect, knowing that the Defendants imposed a trusteeship, combined with the pretextual nature of the trusteeship charges, there are sufficient allegations to warrant a finding that Defendants' contempt and hostility towards Local 50 and its leadership would have prevented Plaintiffs from receiving a fair hearing on any grievance. Thus, drawing all inferences in the FAC in favor of the Plaintiffs, the Court should find that Plaintiffs' internal appeals would have been futile and, therefore, excused from its obligation to exhaust its internal union remedies under the *Clayton* factors. See also *McDonald v. Oliver*, 525 F.2d 1217, 1229 (5th Cir. 1976) (Holding that intra-union appeals would be unlikely to provide much relief since the protests would be to the very International which invoked the trusteeship.")

### 5. *The Exhaustion Defense Fails Because There Were No Adequate Remedies*

In order to prevail on an exhaustion of remedies defense, the party asserting the defense must show that the remedies sought by the plaintiff could have actually been obtained through the internal grievance process.  *Ghebreselassie v. Coleman Sec. Service*, 829 F.2d 892, (9th Cir. 1987) (No exhaustion of remedies required where union constitution allowed for issuance of monetary fine, but not payment of compensatory monetary damages); See also, *Doty v. Sewall*, 908 F.2d 1053, 1061 (1st Cir. 1990) (exhaustion not required because union procedures could not provide complete relief to union member because procedures did not allow for damages to an aggrieved member); *Beyene v. Coleman Sec. Servs., Inc*., 854 F.2d 1179, 1181 (9th Cir. 1988) (The provisions of the Union's constitution found in the record before the Court do "not authorize the payment of money damages to a union member who successfully asserts an internal charge against [the Union].");

*Kaczynski v. Draper Printing*, 848 F. Supp. 1060 (D. Mass. 1994) (Party barred from asserting exhaustion defense where there was no proof of an adequate remedy)

The nature of the dispute and the types of remedies sought belie the contention that the Defendants' Executive Board or Convention would have been able to provide the relief requested.  To begin, the majority of the claims involve intricate legal issues that are not suitable for resolution by laymen — and, more importantly, required remedies that were not available under the WU Constitution. Thus, even if those decision-makers were experienced labor lawyers educated in the intricacies of the LMRDA, the types of remedies sought by the Plaintiffs quite simply were beyond the power of any individual other than a federal court judge. As set forth in the FAC, the underlying remedies sought by the Plaintiffs can be boiled down to the following essentials: a judicial determination as to the validity of the disaffiliation; a judicial determination as to the legal right of Local 50 to retain its assets subsequent to the disaffiliation; a judicial determination as to the validity of the Defendants' governing documents; and a judicial determination of the validity of the trusteeship.   Furthermore, the prayer for relief in the FAC requests various remedies that are nowhere set forth in the WU Constitution, including, but not limited to, awarding compensatory damages, injunctive relief, and punitive damages.

In *Ghebreselassie*, a union member tried to sue his union after he learned that his union failed to timely file a grievance against his employer for wrongfully endeavoring to terminate him.  The plaintiff failed to file any internal union complaint and, instead, sued directly in federal court, alleging that that his employer breached the collective bargaining agreement and that his union breached its duty of fair representation.  In its defense, the employer argued that the plaintiff failed to exhaust his remedies vis-à-vis his union and, in particular, could have utilized the internal union appeals procedures to obtain monetary relief.  The union's constitution provided that the union could be assessed a fine, but that the

money would revert to the treasury. On review, the Ninth Circuit determined that the internal union appeals procedure was inadequate because the union constitution did not provide him with financial redress for the damages he has suffered. Moreover, the employer was unable to provide evidence that adequate remedies were available.  Accordingly, the Court concluded that summary judgment was not appropriate on the ground that the plaintiff failed to exhaust internal union remedies.

The *Ghebreselassie* case is instructive in that it shows that a generalized claim that some "internal review process" is available that might provide some relief is wholly insufficient to justify an affirmative defense.  Not only must there be an adequate review process, but it must provide specific remedy requested. Here, as in *Ghebreselassie*, it was insufficient for the party raising the affirmative defense of exhaustion of remedies to simply aver that the plaintiff made no attempt to exhaust some existent the internal union grievance procedure.  (Dkt. 52, Mtn. 16:7-14)  Rather, it was incumbent on the Defendants to demonstrate that the specific remedies for each of the legal claims asserted were available.

Thus, even assuming *arguendo* that there was a viable internal appeals process, the remedies sought by the Plaintiffs go well beyond any remedy set forth in the WU Constitution and include, *inter alia*, a judicial declaration regarding the right to retain assets, the rescission of the revised affiliation agreement, and various other remedies that do not fall within the scope of a review of a denial of consent to withdraw.  Following *Ghebreselassie*, the mere assertion that an internal grievance process exists is not enough — the Defendants must establish that the Plaintiffs' internal remedies would have been adequate for each of its claims for relief.

> 6. *The Plaintiffs Did Not Unreasonably Circumvent the Internal Appeals Procedure As a Matter of Expediency*

Relying heavily on the facts and holding of *Local 323 v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers,* 160 F. Supp. 2d 500 (W.D.N.Y.

2001), the Defendants attempt to eliminate the Plaintiffs' bulk of the Plaintiffs claims by arguing that this case presents a situation in which the Plaintiffs recklessly and deliberately skipped the internal grievance procedure.   The principal difficulty with applying the *Local 323* is the fact that the text of the disaffiliation provision was starkly different.

In the case at bar, the WU Constitution provided that a "withdrawal" would not be permissible "without the prior consent of the GEB."  (Art. 6 § 5, Dckt. #46) In stark contrast, the international union constitution contained a disaffiliation provision which explicitly stated that disaffiliation was permissible upon "approval of the International Executive Board***…subject to review by the International Convention***." *Id.* at 506.  (Emphasis added.)

Unlike in *Local 323,* there is no such express directive — whether on the face of the disaffiliation provision or elsewhere — remotely suggesting that the GEB's refusal to give consent to "withdraw" could be directly appealed to the international convention.  Nor was there any indication whatsoever that the convention had the authority to override the GEB's determination.   While the Defendants try to assure the Court that the convention had the implicit and unwritten authority to override the GEB's denial of consent, the Defendants cannot ignore the fact that there is no factual support for this sweeping contention.  Surely, if Workers United wanted to clarify that there was some contractual right to override the GEB's seemingly exclusive authority to give consent, that authority should have been delineated somewhere in the governing documents.  Absent any such language, the *Local 323* case is fundamentally inapposite.

Leaving absolutely no doubt that a convention appeal was a predicate requirement to pursuing any court appeal; the Executive Board in the *Local 323* case drafted a letter to the local union explaining that its decision to deny permission to disaffiliate was not final and that it could appeal that decision to the International Convention."  Considering each of these factors, the district court noted that "[a] union can demonstrate the reasonableness of its [appeal] procedures

by showing that 'Union members have been informed of the availability of internal appellate remedies and that these procedures are not particularly cumbersome or confusing." Id. at 506.  Faced with a deliberate refusal to exercise obvious appeal rights, the district court in *Local 323* concluded that the plaintiff local union had unreasonably failed to comply with the very explicit requirement of taking the matter up with the international convention.

By contrast, here, GEB did not make any effort to communicate to Plaintiffs that they could have sought review from the international convention.  On this point, Plaintiffs allege in the FAC that the "Defendants failed to timely apprise Local 50's members of the necessity of submitting the dispute over the denial of their request for disaffiliation before any convention." (FAC ¶61)  The purpose of this factual allegation was not to suggest that Plaintiffs were somehow excused by "ignorance" of any express contract appeals rights as some type of defense, but rather, to highlight an important distinction between this case and *Local 323*. To the extent that written notice of the right to appeal, in conjunction with the explicit appeals language, factored into the district court's conclusion that an internal appeal was "reasonable," we submit that absence of such notice of appeal rights, in conjunction with the absence of any express provision, should factor equally into the Court's determination as to whether an internal appeal was "reasonable" under the circumstances.

7.  *The Court Cannot Resolve the Exhaustion of Remedies Defense Without Conclusively Resolving the Question as to Whether Local 50 Had Disaffiliated By Operation of Law*

The Defendants' argument that the Plaintiffs failed to exhaust remedies is problematic insofar as it places the cart before the horse in regard to the core ultimate issue as to whether Defendants disaffiliated by operation of law.  At the pleading stage, the Court must assume as true that Local 50 took steps to disaffiliate from the Defendants and, therefore, by extension, that Local 50 is no longer bound by the Defendants' internal appeals procedure.  To the extent that the

18

Plaintiffs have pleaded that Local 50 has already disaffiliated, it follows that the exhaustion of remedies defense is inapplicable.  See *Local 1199, Drug, Hospital & Health Care Employees Union, etc. v. Retail, Wholesale & Dep't Store Union*, (SDNY 1987) 671 F. Supp. 279, 286 ("Disaffiliation" is defined as "withdrawal of a local union from a national union or withdrawal of a national union from a parent federation.").

While Defendants argue that disaffiliation could not have occurred, this is an ultimate question of law and fact that must definitively be resolved by the Court in light of all relevant case law, all relevant facts, and all supporting evidence. Because the disaffiliation of Local 50 from the Defendants is an ultimate issue in this case, it follows logically that the exhaustion of remedies defense cannot be asserted before the ultimate issue of disaffiliation is resolved.  Assuming that the Court finds — on the basis of facts and evidence during the course of this litigation — that there was a disaffiliation, the issue of whether the Plaintiff failed to exhaust internal union remedies will be moot.

8.    *No Defense is Raised as to the Ninth Claim For Relief under Title III of the LMRDA*

The Ninth Claim for Relief is predicated on Title III of the LMRDA and seeks to challenge the imposition and continued maintenance of the trusteeship of Local 50 currently in place.  The Defendants have not objected to this cause of action as part of their Motion to Dismiss.  Accordingly, Plaintiffs do not raise any issues on this claim.

E.    Assuming *Arguendo* that the Court Finds that Plaintiffs Failed to Exhaust Administrative Remedies, the Dismissal Must be Without Prejudice

If the Court finds that there are grounds for dismissing any Claim for Relief on exhaustion of administrative remedies grounds, the dismissal of the claims must be without prejudice. *Wyatt v. Terhune* 315 F3d 1108, 1119-1120 (9th Cir. 2003). To begin the analysis, the Court must first determinewhether a dismissal is

jurisdictional or merely a matter in abatement.  In the context of internal union remedies, the "[f]ailure to exhaust administrative remedies is not a jurisdictional bar to hearing plaintiffs' claims, but is an affirmative defense that must be pled and proved by the defendant."  See e.g., *Local 323 v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers*, 160 F. Supp. 2d 500 (W.D.N.Y. 2001) Correspondingly, the Ninth Circuit in *Wyatt* affirmed the basic notion that a dismissal of an action on the ground of failure to exhaust administrative remedies is not a judgment on the merits.

F.  PLAINTIFF ECKLUND'S TENTH CLAIM FOR RELIEF UNDER TITLE I OF THE LMRDA IS A VIABLE INDEPENDENT CAUSE OF ACTION

The Tenth Claim for Relief is predicated on the theory that Defendants have unlawfully interfered with Plaintiff Ecklund's exercise of protected rights under Title I of the LMRDA.  29 U.S.C. §§ 411-415.  Congress enacted Title I of the LMRDA to provide effective remedies to meaningfully enforce "Bill of Rights of Members of Labor Organizations," 29 U.S.C. § 411, whose guarantees include freedom of speech and assembly, the equal rights of all members to vote in union elections, and freedom from improper disciplinary action.  Plaintiff Ecklund alleges that Defendants "have unlawfully chilled free expression of Local 50 members' rights to free speech and assembly" through the trusteeship and removal of Local 50's officers, through "a general campaign to suppress dissent"" and by the suspension of Plaintiff Ecklund "in an effort to eliminate the principal voice of opposition within Local 50, including punishing her for "objecting to the affiliation with SEIU, advocating Local 50's disaffiliation from Defendants" and "filing this lawsuit." (FAC ¶¶ 120-125).  Moreover, Plaintiff Ecklund alleges that Defendants have instituted a "purposeful scheme to suppress dissent" within the union.  *Sheet Metal Workers International Association v. Lynn*, 488 U.S. 353, 441 (1989).

Title I of the LMRDA was enacted to protect people exactly like Plaintiff

Ecklund from being retaliated against for her exercise of protected rights both as a member and an elected officer. See *Ross v. Hotel Employees & Rest. Employees Int'l Union*, 266 F. 3d 236, 252, (3d Cir. 2001) (Protecting both classifications). Assuming for purposes of pleading, that Plaintiff Ecklund's allegations are deemed true, the Court must accept the premise that Local 50's removal of Plaintiff Ecklund was due to her involvement in protected concerted activity, principally including her advocacy of disaffiliation and petitioning activity. (FAC ¶ 120-124) This exercise of dissenting conduct was made known to the Defendants as early as February 27, 2013, when Defendants were formally put on notice of the disaffiliation.  (FAC ¶ 38)  Despite a long history of cordial relations, Plaintiff Ecklund was served with a "Notice of Trusteeship Charges" that charged her with a variety of inflammatory, false and pretextual "grounds" of misconduct, including the dissipation of funds and the denial of democratic rights. (FAC ¶ 41-42, Ex. I) Tellingly, these charges came within days of Plaintiff Ecklund's announcement of Local 50's intent to disaffiliate. (FAC ¶ 41-42, Ex. I)

The law is clear in providing that the retaliatory removal of an elected local union officer is illegal if it is perpetrated because the officer has challenged the authority of an international union.  See *Schonfeld v. Penza*, 477 F. 2d 899, 901-902 (2d Cir. 1973) (Elected official restored to office after being retaliated against for trying democratize district council)

The *Sheet Metal Workers International Ass'n., et al. v. Lynn*, 488 U.S. 347 (1989), squarely rebuts the Defendants' contention that Plaintiff Ecklund cannot bring a Title I action where a trusteeship has been imposed.  The facts of the *Lynn* case are controlling because they involved an individual local union officer who sought to bring a Title I action against his international union in the aftermath of the implementation of a trusteeship. *Id.* 355 There, the question presented was whether the removal of an elected business agent, in retaliation for statements he made at a union meeting in opposition to a dues increase sought by the union trustee, violated the Title I of the LMRDA. *Id.* 350

By the time the trusteeship was imposed, the plaintiff had been "instrumental" in mobilizing a large group of members to demand greater financial accountability and fewer dues. *Id.* 350    Shortly after the plaintiff informed the trustee that he would not agree to support an increase in dues without additional guarantees, the trustee informed the plaintiff that he was being dismissed indefinitely from his elected union position.  The plaintiff brought suit under Section 101(a)(2), the "free speech" provision of the LMRDA. 29 USC § 411(a)(2).

On review, the applicable standard adopted by the Court was whether such interference with Title I rights violates the LMRDA's basic objective: "to ensure that unions [are] democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." *Id. at* 354, The Court reasoned that the basis of his claim was not on the denial of membership rights, but rather retaliation for the exercise of membership rights in a particular way, which in this case meant taking a political stance. *Id.* However, the Court rejected any prerequisite requiring that the aggrieved party show that an adverse action be "part of a purposeful and deliberate attempt… to suppress dissent within the union'." *Id.* (quoting *Schonfeld v. Penza*, supra, 477 F. 2d at 904 )

For our purposes, it is important to adhere to the Court's holding that the plaintiff's right to pursue a Title I action is not preempted or otherwise limited in a trusteeship context, even where  the action is taken on the grounds that it was integral to ensuring the union's continued administration of its trusteeship. *Id.*  at 356.  The international union had argued that, "even if the removal of an elected official for the exercise of his Title I rights ordinarily states a cause of action under § 102, a different result obtains here because Lynn was removed during a trusteeship lawfully imposed under Title III of the LMRDA." *Id.*  The Court categorically rejected this argument, observing that "***we find nothing in the language of the LMRDA or its legislative history to suggest that Congress intended Title I rights to fall by the wayside whenever a trusteeship is imposed***." *Id.* (Emphasis added.)

The Defendants contend that Plaintiff Ecklund's claim fails to state a cause of action for a violation of Title I because she fails to "allege any specific conduct taken by Defendants, outside of the imposition of the trusteeship and concomitant suspension of former officers, nor identify a specific Title I right infringed."  This theory is defective to the extent that it presupposes that Plaintiff Ecklund cannot rely on the imposition of the unlawful trusteeship as part of her claim for relief.

The theory that the removal of Plaintiff Ecklund is supported by the fact that the WU Constitution, at Article 5, Section 4, provides that the trustee's power "to suspend all officer" was discretionary, not mandatory.  While the Defendants try to couch this decision as "part and parcel" of the trusteeship process, there are no governing documents mandating the removal of officers.  Following the Lynn case, Plaintiff Ecklund has alleged enough facts to state a claim for relief on the grounds that her removal was retaliatory under § 102.  Her removal was particularly harmful to the membership insofar as she was the principal mouthpiece for dissenting members who had supported her petitioning activity.

Like *Lynn*, Plaintiff Ecklund was "instrumental" in spearheading a mass mobilization of the membership by obtaining an overwhelming number of disaffiliation petitions from Defendants.  Not only did the procurement of petitions require an exercise of membership rights — implicating speech, petitioning and assembly — the nature of this exercise of rights placed in her direct fear of reprisal.  While it is undoubted that her silence might have ensured her position, the very purpose of Title I is to prevent any union elected official from being forced to choose between her job and foregoing her right to engage in protected activity or risking her job and incurring the wrath of the international union.  Moreover, while this reprisal took place during a trusteeship, the Title I claim is not brought challenge the validity *per se* of the trusteeship, but rather discretionary unlawful acts by Defendants culminating in her removal from office.  Moreover, having accomplished their objective in silencing Ecklund through her removal, the Defendants have gone further in issuing defamatory and pretextual trusteeship

charges that placed Plaintiff Ecklund under a dark cloud on her reputation, causing irreparable harm to her personally and those who have been chilled by Defendants heavy-handed tactics.

In their rebuttal, the Defendants place undue reliance on *Farrell v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 888 F.2d 459, 462 (6th Cir. 1989) which—according to Defendant—stands for the proposition that Title III cannot be brought jointly with a Title I to challenge the misconduct relating to the imposition of a trusteeship.  However, the *Farrell* case merely stands for the limited proposition that a trusteeship may, in the first instance, only be challenged by a Title III action in order to determine "the validity *vel non* of the trusteeship." The *Lynn* case instructs that, although a Title I action cannot be brought to challenge the validity of a trusteeship, the mere existence of a trusteeship does not preclude a viable Title I claim challenging retaliatory adverse actions conducted in connection with the administration of the trusteeship.  See *Lynn, supra.*

In *Thompson v. Office and Professional Employees Intern. Union, AFL-CIO*, 74 F.3d 1492, (6th Cir. 1996), the plaintiff sued an international union, under Title I of the LMRDA, based on his discharge after the international imposed and lifted a trusteeship.  The court held that the plaintiff had standing to bring the claim against the union, and that there was sufficient evidence to support the jury's verdict that the trusteeship was maintained as a purposeful and deliberate attempt to suppress dissent within the local union and the jury's award of emotional distress damages and punitive damages.

Finally, Defendants' contend that, "[b]ecause the very nature of a trusteeship presupposes the suspension of the former officers, that fact alone does not provide the basis of a Title I claim." (Dkt # 52 Motion to Dismiss at pg. 23:4-5).  Although not altogether clear, the Defendants seem to contend that the Defendants are immune from illegally suspending Plaintiff Ecklund because that because the nature of a trusteeship normally involves the illegal suspension of officers.  This is defies the principle enunciated in the *Lynn* "nothing in the language of the

24

LMRDA or its legislative history to suggest that Congress intended Title I rights to fall by the wayside whenever a trusteeship is imposed." *Lynn* case, supra, at 356.

There is no question that the Defendants were using the trusteeship as a tool to harm Ecklund, and that she is entitled to be compensated for any losses sustained as the result of that misuse.  Plaintiff Ecklund's Title I claim is directed only in part to improper motive on the part of Defendants in connection with her removal from office as part of the trusteeship, but also the systematic effort by Defendants to suppress free speech and dissent within the Local 50, including subjecting her to false and defamatory charges that tarnish her credibility as a leader of Local 50.  Allowing Ecklund to seek individual compensatory damages will inure to the benefit of the entire membership which has been chilled by Defendants' wrongful conduct inasmuch as it will cause the Defendants to fully consider the ramification of its actions in imposing trusteeships in the future.

## III.   CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety.


Dated:  July 31, 2013                    Respectfully submitted,

                                            **THE MYERS LAW GROUP, A.P.C.**


                                  By:  ____/s/Ann Hendrix_____
                                        David P. Myers
                                        Ann Hendrix
                                        Attorneys for Plaintiffs